UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBORAH LYNN APPLEBY,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　v.　　　　　　　　　　　　)　　　CIVIL ACTION
　　　　　　　　　　　　　　　　)　　　NO. 13-10207-JGD
CAROLYN W. COLVIN, Acting　)
Commissioner of the Social Security　)
Administration,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　)

**MEMORANDUM OF DECISION AND
ORDER ON CROSS-MOTIONS REGARDING
DENIAL OF SOCIAL SECURITY BENEFITS**

February 14, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Deborah Lynn Appleby ("Appleby"), has brought this action

pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g)

and 1383(c)(3), in order to challenge the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying her claim for Social Security

Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  The

matter is presently before the court on the plaintiff's "Motion to Remand or Reverse

Decision of Social Security Administration" (Docket No. 17), by which the plaintiff is

seeking an order reversing the Commissioner's decision and entering judgment in her

favor or, in the alternative, remanding the matter to the Social Security Administration for

further administrative proceedings.  It is also before the court on the "Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 20), by which the Commissioner is seeking an order affirming her decision to deny Appleby's claim for benefits.  The sole issue raised by the parties' motions is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Appleby was not disabled, erred by adopting the opinion of Yakov Kogan, M.D., a consulting examiner, regarding the credibility of Appleby's claims of disabling pain and other symptoms.  The plaintiff contends that it was improper for a consulting examiner to render an opinion regarding the claimant's credibility.  She also contends that the ALJ compounded the problem by adopting Dr. Kogan's opinion instead of conducting an assessment of her credibility on his own.

As detailed herein, the record does not support Appleby's suggestion that Dr. Kogan usurped the role of the ALJ by assessing the plaintiff's credibility or that the ALJ failed to conduct an independent analysis of the plaintiff's credibility based on a review of the record as a whole.  Because this court finds that the ALJ acted appropriately, and that his assessment was supported by substantial evidence, the plaintiff's motion to reverse or remand is DENIED, and the Commissioner's motion to affirm is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

Appleby was born on December 24, 1981, and was twenty-nine years old at the time of her hearing before the ALJ.  (Tr. 36; 174).  She completed five years of college, and was licensed by the State of Maine as a sign language interpreter until 2010, when

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 10.

she allowed her license to lapse due to her various health problems and her inability to afford the continuing education needed to maintain the license. (Tr. 37-38). During the time period from April 1998 through early 2009, Appleby held jobs as a kennel worker, daycare worker, personal care attendant, interpreter, and retail store cashier. (Tr. 61-62; 203). However, in or about February 2009, the plaintiff left her job as a cashier at a Walmart store following an incident in which her back seized up, she was unable to get out of bed, and had to be driven to the hospital emergency room. (Tr. 38-39). Appleby claims that she has been unable to work since that time due to pain, fatigue and depression stemming mainly from degenerative conditions in her back, defects in her knees, severe migraine headaches, and a sleep disorder. (See Tr. 39-43, 223-25, 239).

## Procedural History

Appleby filed applications for SSDI and SSI benefits on March 10, 2009, claiming that she had been unable to work since January 1, 2009[2] due to pain and severe limitations on her physical abilities caused by endometriosis, knee defects, and several back conditions, including spina bifida, scoliosis and degenerative disc disease. (Tr. 170-80, 202). Her applications were denied initially on October 19, 2009, and upon reconsideration on March 23, 2010. (Tr. 67-70). The plaintiff subsequently requested and was granted a hearing before an ALJ, which took place on August 30, 2011. (Tr. 33-66, 87, 133-38). Appleby, who was represented by counsel, appeared and testified at

---

[2]  In her application for SSDI benefits, Appleby claimed that she had been unable to work since June 30, 2008. (Tr. 170). However, it is undisputed that Appleby was still working at that time, and that she is claiming an alleged onset date of January 1, 2009. (See Pl. Mem. (Docket No. 18) at 1; Tr. 174, 197, 202).

the hearing.  (Tr. 36-60).  Additionally, the ALJ elicited testimony from a vocational expert ("VE"), who described the plaintiff's past work experience and answered questions from both the ALJ and Appleby's counsel regarding a hypothetical claimant with the same age, education and employment background as the plaintiff.  (Tr. 60-66).

Significantly, during the hearing, Appleby provided testimony regarding the pain and other symptoms that she experiences as a result of her health conditions, and was asked to describe the treatment she has received, as well as the extent to which that treatment has helped to relieve her symptoms.  (Tr. 44-48, 56-59).  Additionally, the ALJ asked Appleby to discuss any side effects that she has suffered as a result of her medications, and to describe the impact that her physical and mental impairments have had on her ability to carry out day-to-day activities.  (Tr. 46, 48-56).  Accordingly, Appleby described how her physical and mental impairments have effected her ability to socialize, drive a car, cook, watch television, use a computer and otherwise function during the course of an ordinary day.  (Tr. 50-56).  As detailed below, the ALJ properly considered the plaintiff's testimony on these matters in assessing the credibility of the plaintiff's claims of disabling pain and functional limitations.

On September 23, 2011, the ALJ issued a decision denying the plaintiff's applications for benefits, and on December 5, 2012, the Appeals Council denied her request for review.  (Tr. 7-26, 1-3).  Therefore, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### The ALJ's Decision

The ALJ concluded that from January 1, 2009 through the date of his decision on September 23, 2011, Appleby had not been "under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  (Dec. 1-2 and Finding #11; Tr. 10-11, 26).  See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision, applied the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920.  The procedure resulted in the following analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-17; Tr. 12-26).

The first inquiry in the five-step process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied.  See id.  In the instant case, the ALJ determined that Appleby had not engaged in substantial gainful work activity since January 1, 2009, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 13).  Therefore, the ALJ proceeded to the next step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c),

416.920(c).  If not, the claimant is considered not disabled and the application for

benefits is denied.  See Seavey, 276 F.3d at 5.  Here, the ALJ concluded that Appleby

suffered from a variety of severe impairments, including congenital spina bifida,

scoliosis, lumbar degenerative disc disease, patellofemoral syndrome in her right knee,

migraine headaches, obesity and depression.  (Dec. Finding #3; Tr. 13).  Accordingly, his

analysis continued.

The third inquiry is whether the claimant has an impairment equivalent to a

specific list of impairments contained in Appendix 1 of the Social Security regulations, in

which case the claimant would automatically be found disabled.  See Seavey, 276 F.3d at

5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At this step, the ALJ determined

that Appleby's impairments, either alone or in combination, did not meet or medically

equal any of the listed impairments.  (Dec. Finding #4; Tr. 13).  Consequently, he

proceeded to step 4 in the analysis.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is

such that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  Thus,

at this stage of the analysis, the ALJ was required to determine the plaintiff's residual

functional capacity ("RFC").  In this case, the ALJ made the following finding regarding

Appleby's RFC:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 404.1567(a) and

-6-

416.967(a)[3] except she could maintain concentration, persistence or pace on simple, routine tasks for 2 hour periods out of an 8 hour workday.  In addition, she could interact appropriately with supervisors, coworkers, and the general public (Exhibits 13F-15F).

(Dec. Finding #5; Tr. 15 (footnote added)).  As described below, this finding was based in part on the ALJ's determination that Appleby's allegations as to the extent of her pain and functional limitations were "partially credible."  For the reasons set forth herein, this court finds that the ALJ made an independent credibility determination, and it was supported by the record.

## Details Regarding the ALJ's RFC Assessment

In rendering his assessment regarding Appleby's RFC, the ALJ first addressed whether Appleby's medically determinable impairments, including her physical and mental health conditions, could reasonably be expected to cause the pain and other symptoms that the plaintiff claims have rendered her disabled.  (See Dec. 6-13; Tr. 15-22).  Thus, as an initial matter, the ALJ considered the testimony that the plaintiff had given at the hearing including, but without limitation, her testimony as to why she stopped working, her description of her pain and physical limitations, her description of the treatment and medications that she has relied on to control her symptoms, and details as to how her symptoms, including her fatigue, back pain and knee pain, limit her ability

---

[3]  "Sedentary work" is defined in the regulations as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 414.967(a).

to carry out various day-to-day activities.  (Dec. 7; Tr. 16).  He also considered

Appleby's statements regarding the effectiveness of her treatment in controlling her pain,

her description of certain side effects that she experiences as a result of her medication,

and his own observations of the plaintiff at the hearing.  (Id.).  In particular, the ALJ

noted that Appleby "alternated between sitting and standing to relieve lumbar pain

symptoms" throughout the hearing, and that she "appeared physically uncomfortable, but

maintained good eye contact and responded appropriately to all questions without

evidence of tears, facial contortions, or vocalization of pain symptoms."  (Id.).

### The ALJ's Review of the Medical Evidence

After considering Appleby's subjective complaints, the ALJ conducted a review of

the medical evidence, including all of the medical evidence concerning the plaintiff's

physical and mental health conditions.  (See Dec. 7-13; Tr. 16-22).  Thus, the ALJ

reviewed evidence showing that the plaintiff had a history of back surgery, as well as a

history of surgery on her right knee.  (See Dec. 8, 10, 12; Tr. 17, 19, 21).  He also

considered evidence describing the results of various medical and psychological tests and

examinations, the nature and extent of the treatment Appleby received for her pain,

depression, migraine headaches and sleep deprivation, and the opinions of various

medical experts as to the extent of Appleby's physical and mental health limitations.

(See Dec. 7-13, Tr. 16-22).

Significantly, in connection with his review of the medical evidence, the ALJ

considered the results of a consultative examination that was performed by Dr. Yakov

Kogan in order to evaluate the plaintiff's allegations of chronic lower back and right knee

pain.  (See Dec. 8-9; Tr. 17-18).  The examination took place on May 20, 2009.  (Dec. 8;

Tr. 17; see also Tr. 274).  As the ALJ described in his written opinion:

> The physical exam showed tenderness to palpitation at the lumbar spine, but no thoracic or cervical tenderness, no observable scoliosis or kyphosis.  Dr. Kogan stated that [Appleby] had full range of motion of the cervical spine; however, at first, she refused to bend at the lumbar spine to remove her shoes and socks in order to demonstrate forward flexion of the lumbar spine, but finally flexed her lumbar spine to 90 degrees when getting up from the chair.  As for her right knee, there was no tenderness, swelling, redness, or heat, and there was full range of motion and good strength throughout the range of motion; however, the claimant reported pain throughout the full range of motion.  *Furthermore, Dr. Kogan added that [Appleby's] motor strength was 5/5 in her upper and lower extremities bilaterally, fine finger movements were normal bilaterally, sensation was intact, deep tendon reflexes were normal, her straight leg test was positive at 30 degrees bilaterally, and she was able to stand independently for a few seconds, but the claimant refused to ambulate more than three steps without a cane.*  Finally, Dr. Kogan found her mental status exam was normal with the claimant being alert, fully oriented, without language deficit, displaying good long and short term memory, and good concentration.  The claimant had reported a history of ADHD, but was not currently medicated for the condition, and depressive symptoms without suicidal ideation, plan or attempt, nor hallucinations or psychiatric hospitalizations.

(Dec. 8-9; Tr. 17-18 (emphasis added)).  As described below, the ALJ relied on Dr.

Kogan's comment regarding Appleby's refusal to take more than three steps without a

cane to support his conclusion that her allegations regarding the extent of her functional

limitations were not entirely credible.  However, he did not rely exclusively on Dr.

Kogan's report, and did not fail to conduct his own assessment regarding the plaintiff's

credibility.

The ALJ also considered the opinion of an unnamed state agency consultant, who rendered an assessment of Appleby's physical RFC in June 2009 based on a review of her medical records.  As the ALJ described in his written opinion, the consultant determined that Appleby retained the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand or walk for at least 2 hours in an 8-hour work day, and to sit for 6 hours in an 8-hour work day.  (Dec. 9; Tr. 18).  He further opined that the plaintiff had no limitations in her ability to push and pull with her upper and lower extremities, and that she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. (Id.).  However, the consultant determined that Appleby could not climb ropes, ladders or scaffolds, and that she should avoid concentrated exposure to such hazards as unprotected heights and machinery.  (Id.).  Therefore, the consultant opined that Appleby retained the capacity to perform tasks consistent with light work.  See 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining "Light work" to include work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "sitting most of the time with some pushing and pulling of arm or leg controls").

In forming his opinion regarding Appleby's RFC, the state agency consultant considered, among other evidence, the report of Dr. Kogan's May 20, 2009 examination. (Id.; see also Tr. 283).  As the ALJ observed in his written decision, "the medical consultant gave weight to Dr. Kogan's observations that the claimant was less than cooperative, insisting on using her cane although Dr. Kogan found that she did not need a cane to ambulate effectively."  (Dec. 9; Tr. 18).  The ALJ also remarked on the fact that

the state agency consultant had rendered his own opinion, based on his review of the objective medical evidence, that "the claimant's allegations of functional limitations were not credible." (Id.). As detailed below, however, the ALJ did not adopt the state agency consultant's opinion of Appleby's credibility or his assessment of Appleby's RFC.

The ALJ also considered a more recent RFC assessment, which was completed by Jane Matthews, M.D., another state agency consultant, on March 9, 2010. (See Dec. 11; Tr. 20). As the ALJ noted in his written decision, Dr. Matthews determined, based on her review of the objective medical evidence, "that the claimant's allegations of pain and functional limitations [were] credible." (Dec. 11; Tr. 20; see also Tr. 419). Nevertheless, Dr. Matthews' conclusions regarding the plaintiff's physical RFC were similar to those of the unnamed state agency physician who had found the plaintiff's allegations of disabling symptoms not credible. Specifically, Dr. Matthews determined that Appleby remained capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing or walking for at least 2 hours in an 8-hour work day, and sitting for 6 hours in an 8-hour work day. (Id.; see also Tr. 418). She also concluded that the plaintiff had no limitations on the use of her upper extremities for pushing and pulling, and retained the capacity to occasionally climb, balance, stoop, kneel, crouch or crawl. (Dec. 11; Tr. 20; see also Tr. 418-19). However, Dr. Matthews found that Appleby had a limited ability to use her lower extremities for pushing and pulling, and she recommended that the plaintiff avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, as well as to hazards such as unprotected heights and machinery. (Dec. 11; Tr. 20; see also Tr. 418,

421).  Thus, while Dr. Matthews' assessment of Appleby's functional limitations was somewhat more restrictive than the June 2009 RFC assessment of the unnamed state agency consultant, her conclusions regarding the plaintiff's RFC were consistent with an ability to carry out tasks at the light exertional level.  See 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work).

The ALJ's Credibility Assessment

Based on his review of the available medical evidence, the ALJ determined that Appleby's medically determinable impairments could reasonably be expected to cause her alleged pain and other symptoms.  (Dec. 13; Tr. 22).  However, because he determined that the objective medical evidence did not substantiate the plaintiff's claims regarding the intensity, persistence, or functionally limiting effects of her pain and other symptoms, the ALJ went on to assess Appleby's credibility.  (See Dec. 6-7, 13-14; Tr. 15-16, 22-23).  The ALJ concluded, "[a]fter careful consideration of the evidence," that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Dec. 13; Tr. 22).  Therefore, he determined that the plaintiff's complaints about her physical limitations were credible only to the extent that they restricted her to sedentary work.  (See Dec. Finding #5; Tr. 15).  The plaintiff contends that this finding was not based on substantial evidence because it reflected nothing more than the ALJ's wholesale adoption of Dr. Kogan's improper assessment of her credibility.  For the reasons detailed below, this court disagrees with this

characterization of the ALJ's opinion and finds that the ALJ's credibility determination was supported by substantial evidence in the record.

The ALJ provided a written explanation for his finding as to the plaintiff's credibility.  With respect to Appleby's physical limitations, the ALJ explained that while the record supported the plaintiff's diagnoses of spina bifida, scoliosis, degenerative disc disease, right knee impairment and migraine headaches, and showed that she had been treated with two back surgeries, three arthroscopic right knee surgeries, steroid injections and physical therapy, it did not support her claim that her physical impairments, either alone or in combination, precluded her from performing all work-related activities.  (Dec. 13-14; Tr. 22-23).  In particular, the ALJ found that "lumbar and thoracic MRI studies and x-rays in March, April, and August 2009 showed that the spine was unchanged status post L5-SI fusion, and that there was no evidence of lateralizing disc extrusion or limiting stenosis." (Dec. 14; Tr. 23).  He also noted that an x-ray taken of Appleby's right knee in November 2010 showed that the knee was normal.  (Id.).  Moreover, the ALJ credited the findings of Appleby's treating pain specialists, who found that 80 to 90 percent of the patient's migraine pain was relieved for five weeks with the use of bilateral trigger point injections and greater occipital nerve blocks, that trigger point and nerve blocks provided some relief for her lumbar pain, and that Appleby's physical examinations were otherwise within normal limits.  (Id.).

The ALJ also relied specifically on Dr. Kogan's findings to support his conclusions regarding the credibility of the plaintiff's claims of disabling symptoms.  In parti-

cular, the ALJ found it significant that Dr. Kogan had found tenderness to palpitation in Appleby's lumbar spine, but found "no thoracic or cervical tenderness, no observable scoliosis or kyphosis, full range of motion of the cervical spine and right knee, and no tenderness, swelling, redness, or heat in the right knee." (Id.).  The ALJ further noted as follows with respect to Dr. Kogan's consultative examination:

> Dr. Kogan also remarked that the claimant was uncooperative when trying to test lumbar spine flexion; and he did not find her credible regarding her inability to stand or ambulate without assistive device because the objective medical evidence did not support such a limited finding. The remainder of the physical exam was within normal limits.

(Id.).  Therefore, it appears that the ALJ  interpreted Dr. Kogan's remarks to mean that Dr. Kogan did not believe her claim that she could not walk independently or, as the defendant argues, conflated Dr. Kogan's observations regarding Appleby's refusal to walk without her cane with the opinion of the unnamed state agency consultant that Appleby's allegations as to the extent of her functional limitations were not credible. (See Def. Mem. (Docket No. 21) at 8).  In any event, the ALJ did not conclude that Appleby's claims were not credible, as the plaintiff argues.  (See Pl. Mem. at 6).  Instead, he determined, "based on the medical record as a whole," that the plaintiff's allegations of pain and functional limitations were "partially credible," but that she could not perform anything more physically demanding than sedentary work.  (Dec. 14; Tr. 23).

## The ALJ's Consideration of Opinion Evidence

Following his discussion of the plaintiff's credibility, the ALJ described the weight that he was giving to the opinions of various medical professionals in assessing the

plaintiff's RFC.  With respect to Appleby's physical limitations, the ALJ stated that he was giving no weight to an RFC assessment that was completed by Appleby's primary care physician, Karen Allard, M.D., in which Dr. Allard opined that the plaintiff could not sit, stand and walk for more than a total of 3 hours in an 8-hour workday; could not lift or carry more than 5 pounds occasionally; could not use her upper extremities for pushing, pulling or fine manipulation; could not bend, squat, crawl or climb; and should not be exposed to unprotected heights, moving machinery or marked changes in temperature or humidity.  (See Dec. 12, 15; Tr. 21, 24; see also Tr. 697).  As the ALJ explained, "Dr. Allard's assessment is based on the claimant's subjective allegations, rather than the objective medical record[.]"  (Dec. 15; Tr. 24).  Therefore, he declined to accept it.

The ALJ also declined to adopt the physical RFC assessments of Dr. Matthews and the unnamed state agency consultant.  With regard to those assessments, the ALJ explained that he was giving Appleby "the benefit of the doubt regarding pain symptoms," and was therefore giving "less weight" to the opinions of the state agency physicians.  (Id.).  Thus, the ALJ rejected the consultants' opinions that Appleby retained the capacity to perform tasks consistent with light work, and determined that the plaintiff was "more functionally limited to a sedentary exertional work level[.]"  Id.

Finally, the ALJ stated that he was giving no weight to the opinions of Appleby's treating orthopedic specialists, Drs. Davis and Bakos, that the plaintiff met listing 1.02A of the listed impairments, which concerns dysfunction of a major weight bearing joint.

(See Dec. 13, 15; Tr. 22, 24).  The ALJ explained that he was rejecting those opinions because the doctors had provided no basis for them, and because their opinions were contradicted by objective imaging studies and by Dr. Davis' own findings in October and November 2010.  (Dec. 15; Tr. 24).  Accordingly, the ALJ concluded that "the above residual functional capacity assessment is supported by medically acceptable imaging, physical and psychological consultative examinations, and objective clinical findings of treating specialists and physicians."  (Id.).

After explaining the basis for his RFC determination, including his findings regarding the plaintiff's credibility, the ALJ determined that Appleby was unable to perform her past relevant work as a retail cashier, daycare worker, sign language interpreter, kennel attendant, or personal care attendant.  (Dec. Finding #6; Tr. 24).  Consequently, the ALJ reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the testimony of the VE to conclude that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"  (Dec. Finding #10; Tr. 25).

Accordingly, the ALJ found that Appleby was not disabled.  (Dec. 16; Dec. Finding #11; Tr. 25, 26).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.  Standard of Review

Appleby is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a re-hearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Thus,

"the court's function is a narrow one limited to determining whether there is substantial

evidence to support the [Commissioner's] findings and whether the decision conformed

to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315,

319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.

1987).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'" Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual

error, the court may reverse or remand such decision to consider new, material evidence

or to apply the correct legal standard." Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B.    Adequacy of the ALJ's Credibility Determination

The plaintiff's sole challenge to the ALJ's decision in this case concerns his finding regarding Appleby's credibility.  Specifically, Appleby argues that the ALJ committed reversible error by relying on Dr. Kogan's unsupported opinion that the plaintiff could walk without her cane, and adopting Dr. Kogan's determination that she was not credible without performing his own assessment of the plaintiff's credibility. Thus, as the plaintiff contends,

> [i]n the instant case, the ALJ improperly relied on a credibility assessment made by the consultative examiner in determining whether to award benefits to Ms. Appleby, thereby allowing a major factual finding to be made by said examiner, and not by the Commissioner.... It is not the role of the CE to assess credibility, but rather to evaluate the medical condition of the claimant.  In compounding this error, the ALJ relied on this improper asessment in concluding that Ms. Appleby is not credible and to deny her benefits.

(Pl. Mem. at 6).  Consequently, Appleby contends that the ALJ committed reversible error, and that the decision to deny her benefits should be reversed or remanded for further administrative proceedings.  For the reasons that follow, this court finds that Appleby's arguments lack merit, and that the Commissioner's decision must be upheld.

The plaintiff's arguments regarding Dr. Kogan's opinion and the ALJ's credibility determination are based on a confused reading of the record.  As an initial matter, the plaintiff's assertion that Dr. Kogan conducted an assessment of her credibility is not

supported by Dr. Kogan's report of his consultative examination.  Therein, Dr. Kogan recounted Appleby's description of her physical and psychological conditions, including her history of chronic pain in both her lower back and right knee. (Tr. 274).  He also described his findings and impressions based on his examination of the plaintiff.  (See Tr. 275-77).  For example, but without limitation, Dr. Kogan found that there was tenderness to palpation in Appleby's lumbar spine, but no thoracic or cervical spine tenderness and no tenderness, swelling, redness, or heat in her right knee.  (Tr. 275).  He also determined that Appleby had full range of motion in her both her cervical spine and her right knee, but that she reported pain in her knee throughout the range of motion.  (Id.).  However, Dr. Kogan did not express an opinion regarding the veracity of the plaintiff's reports regarding her history of chronic pain or her complaints of pain during the course of his examination.  (See Tr. 275-77).

As the ALJ pointed out in his written decision, Dr. Kogan did describe certain inconsistencies between his own observations and Appleby's claims regarding the extent of her physical limitations.  In particular, Dr. Kogan reported that Appleby initially "refus[ed] to bend at the lumbar spine to remove her shoes and socks due to reported lumbar spine pain" but that she later "forward flex[ed] at the lumbar spine to 90 degrees when asked to place her hands onto the seat of her chair while standing[.]"  (Tr. 275).  He also reported that "[s]he refuses to take any significant steps independently without her cane reporting pain at the lumbar spine and R knee during ambulation[,]" but that she was able to stand independently for several seconds without any observable instability,

although she then grasped furniture "reporting instability due to lower back and [right] knee pain." (Tr. 276-77). Dr. Kogan also reported that Appleby "was able to take 3 independent steps without her cane which were quite slow, short and widebased but without any observable instability or antalgia[.]" (Tr. 276). Significantly, Dr. Kogan made no attempt to assess the plaintiff's physical RFC and did not comment on her credibility at any point in his written report. (See Tr. 274-78). However, even assuming, arguendo, that the ALJ interpreted Dr. Kogan's report of his observations as a comment on Appleby's credibility, or agreed with the state agency consultant's view of Dr. Kogan's report as supporting a finding that the plaintiff was not credible, it was within his authority to do so. See Teixeira v. Astrue, 755 F. Supp. 2d 340, 346 (D. Mass. 2010) (explaining that "[i]t is the 'responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." (quoting Irlanda Ortiz, 955 F. 2d at 769)). There is no support for the plaintiff's contention that Dr. Kogan performed an assessment of her credibility or that the ALJ erred by adopting Dr. Kogan's opinion on that issue.

The plaintiff's assertion that the ALJ found her subjective complaints "not credible" is also undermined by the administrative record. (See Pl. Mem. at 6). As described above, the ALJ determined, "based on the medical record as a whole," that "the claimant's allegations of pain and functional limitations are partially credible, and that she is still capable of performing sedentary exertional work-related tasks." (Dec. 14; Tr.

23).  Therefore, he credited the plaintiff's subjective claims to the extent they were

consistent with an inability to perform anything more than sedentary work.

This court finds that there also is no support for Appleby's contention that the ALJ

failed to conduct his own assessment of the plaintiff's credibility and merely adopted the

opinion of a medical expert.  As the record shows, the ALJ considered the opinion of the

unnamed state agency consultant that the plaintiff's allegations of functional limitations

were not credible.  (See Dec. 9; Tr. 18).  He also considered Dr. Matthews' opinion that

the plaintiff's allegations of pain and functional limitations were credible.  (See Dec. 11;

Tr. 20).  However, the ALJ did not adopt either of the state agency physicians' opinions

regarding the plaintiff's credibility or her physical RFC.  Instead, the ALJ explained that

he was "giving the claimant the benefit of the doubt regarding [her] pain symptoms" and

was therefore giving "less weight" to the opinions of the state agency consultants that

Appleby retained the physical capacity to perform tasks consistent with light work.  (Dec.

15; Tr. 24).  Therefore, the ALJ explicitly rejected the available opinions as to the

plaintiff's credibility.

The record demonstrates that, in contrast to the plaintiff's contention, the ALJ

conducted an independent credibility evaluation based upon all of the evidence in the

record.  As described above, the ALJ reviewed all of the objective medical evidence

relating to Appleby's physical and psychological impairments, and made specific findings

to support his credibility analysis.  (See Dec. 7-15; Tr. 16-24).  He also appropriately

considered his own observations of the plaintiff at the hearing.  See SSR 96-7p, 1996 WL

374186, at *5 (July 2, 1996) ("the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements").  Moreover, the ALJ considered the substance of Appleby's hearing testimony, including her statements concerning the nature, location, onset, duration, frequency, and intensity of her pain and other symptoms; precipitating and aggravating factors for her pain and other symptoms; her medications and their side effects; treatment other than medication; her alleged functional limitations; and her activities of daily living.  (See Dec. 7; Tr. 16, 42, 45-60).  The record thus shows that the ALJ considered the factors relevant to assessing the credibility of a claimant's subjective complaints of disabling pain and other symptoms, and that he carried out his obligation to "evaluate the credibility of the claimant's subjective complaints of disabling limitations based on consideration of the entire record[.]"  Larlee v. Astrue, 694 F. Supp. 2d 80, 85 (D. Mass. 2010).  See also Teixeira, 755 F. Supp. 2d at 347 (finding that ALJ's credibility assessment was supported by substantial evidence where hearing officer specifically considered claimant's "testimony regarding the nature, location, onset, duration, frequency, and intensity of her pain; precipitating and aggravating factors for her pain; her medications and their side effects; other treatment modalities; her alleged functional limitations; and her activities of daily living").  Therefore, this court finds that the ALJ's credibility determination is entitled to deference.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that

testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

Nevertheless, the plaintiff argues that four months after Dr. Kogan's examination, she underwent major surgery on her right knee.  (Pl. Mem. at 4).  Accordingly, she argues that the record supports her claim that she was unable to stand or walk without her cane, and that the ALJ was wrong to credit Dr. Kogan's view "that she did not need to use it, although she insisted on doing so."[4]  (See id.).

Even assuming that Dr. Kogan offered an opinion as to Appleby's credibility, and that the ALJ relied on that opinion improperly, any such error would not undermine the ALJ's determination that Appleby retained the capacity for sedentary work.  In connection with his credibility assessment, the ALJ relied not only on Dr. Kogan's alleged "opinion," but also on Dr. Kogan's objective findings that Appleby had full range of motion in her right knee, and that she exhibited no tenderness, swelling, redness, or

_____

[4]  The plaintiff also argues that there is no support for Dr. Kogan's conclusion "that she is not credible because she indicated that she could not walk without ... crutches[,]" and that the ALJ compounded this inaccuracy by adopting Dr. Kogan's view of her credibility on this issue. (Pl. Mem. at 8).  This argument is based on a misreading of the record.  As an initial matter, there is no mention of crutches anywhere in Dr. Kogan's report, and there is no basis for Appleby's claim that he rendered any opinion relating to her use of crutches.  (See Tr. 274-77).  Furthermore, there is no support for her claim that the ALJ adopted Dr. Kogan's view that Appleby was not credible because she refused to walk without crutches.  As described above, the ALJ did discuss Dr. Kogan's view regarding the credibility of Appleby's claim that she could not stand or ambulate without her cane.  However, the ALJ made no mention of crutches in connection with his credibility assessment.  (See Dec. 13-14; Tr. 22-23).  The ALJ did state, in connection with his finding that Appleby's impairments did not meet any of the listed impairments, that "Dr. Kogan's consultative opinion was that she could ambulate effectively without a cane, although she refused to do so during the exam ... and imaging studies showed her right knee was post-operatively within normal limits and treating surgeons recommended she wean off the crutches and the brace and resume weight bearing activities as tolerated[.]"  (Dec. 5; Tr. 14).  Again, however, he did not suggest that Dr. Kogan rendered an opinion relating to her use of crutches.

heat in her right knee.  (Dec. 14; Tr. 23).  He also relied on an x-ray, which was taken on November 16, 2010, nearly one and a half years after Dr. Kogan's examination, showing that the plaintiff's right knee was within normal limits.  (Id.).  Therefore, the record supports the ALJ's conclusion that Appleby's physical impairments, including her knee pain, did not preclude her from performing work at the sedentary exertional level, and any error that the ALJ may have made by relying on Dr. Kogan's view of Appleby's credibility was harmless.  See Teixeira, 755 F. Supp. 2d at 348 (upholding ALJ's finding that claimant was not disabled where ALJ's error was harmless).

## IV.  CONCLUSION

For all the reasons detailed herein, the plaintiff's "Motion to Remand or Reverse Decision of Social Security Administration" (Docket No. 17) is DENIED and the "Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 20) is ALLOWED.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge